**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | |
| | * | **Case No. MJM-26-CR-189** |
| **DESHON THOMAS,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

**\*\*\*\*\*\*\***

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its undersigned attorneys, submits this Detention Memorandum in advance of Defendant Deshon Thomas's detention hearing, scheduled for June 10, 2026.

### INTRODUCTION

Mr. Thomas is charged with one count of conspiracy to distribute and possess with intent to distribute mixtures or substances containing a detectable amounts of heroin, fentanyl, o-methyl fentanyl, and four counts of possession with intent to distribute said controlled substances, as discussed in detail below. This criminal conduct represents a significant risk to public safety, which is reflected in the mandatory minimum penalties and statutory presumption in favor of detention based on these charges. Mr. Thomas's criminal history further indicates that the conduct charged here is not an anomaly, but part of a decades-long history of trafficking controlled substances in and around Baltimore. Based on the facts, circumstances, and relevant statutory considerations discussed herein, the Court should order detention.

### FACTUAL AND PROCEDURAL BACKGROUND

In January 2026 the Federal Bureau of Investigation (FBI) received information from a confidential informant (CI-1) that Deshon Thomas a/k/a "Church" and others were selling heroin

in Anne Arundel County and Baltimore, Maryland.  In response to this information, the FBI began an investigation into Mr. Thomas.

In February 2026, FBI agents began to utilize CI-1 and a second confidential informant (CI-2), both jointly and individually, to conduct controlled purchases of suspected heroin from Mr. Thomas and his co-conspirator, Ralph Bailey. In this investigation, both CI-1 and CI-2 provided credible and reliable information that the FBI has corroborated through multiple sources. CI-1 and/or CI-2 conducted a total of five controlled purchases, including on the four dates of the charged conduct in counts 2 through 5 of the Indictment: February 4, 6, and 27, and March 18, 2026. Following each transaction, FBI agents seized the suspected drugs from CI-1 and/or CI-2 and sent them to the Drug Enforcement Agency (DEA) Mid-Atlantic Laboratory for chemical analysis. These controlled purchases resulted in the seizure of approximately 192 grams of fentanyl (a Schedule II substance), 55.29 grams o-methyl fentanyl (a Schedule I substance) and 77.17 grams of a mixture containing o-methyl fentanyl and heroin (a Schedule I substance).

FBI agents conducted a fifth controlled purchase utilizing CI-2 on May 19, 2026. The drugs seized during that operation were submitted to a DEA laboratory and are currently pending chemical analysis. Throughout the day of May 19, 2026, FBI agents maintained physical and electronic surveillance on Mr. Thomas. Prior to the controlled purchase, FBI agents observed Mr. Thomas interacting with individuals at two suspected stash houses in Baltimore, where he retrieved a knotted black bag consistent with what the FBI later seized from CI-2 as a result of the May 19th controlled purchase. Physical and video surveillance showed that before leaving the location of the controlled purchase, a retail store in Baltimore City that was open to the public, Mr. Thomas walked around for several minutes, openly carrying a thick, folded wad of currency that CI-2 had provided in exchange for the drugs, and then urinated in the public parking lot next to his vehicle.



Following the controlled purchase, as depicted below, Mr. Thomas returned to the vicinity of the stash houses and openly flaunted a stack of currency consistent with the investigative funds the FBI provided to CI-2 for the purchase.



On June 4, 2026, a grand jury sitting in the District of Maryland returned an indictment charging Mr. Thomas with one count of conspiracy to distribute and possess with intent to distribute controlled substances and four counts corresponding with each aforementioned controlled purchase. ECF No. 1. On June 8, 2026, pursuant to search warrants issued by the Honorable Charles D. Austin, U.S. Magistrate Judge for the District of Maryland, FBI agents

3

executed search warrants for Mr. Thomas's residence, vehicle, and both suspected stash houses. Investigators recovered packaging materials consistent with those seized during the controlled purchases, a digital scale, and other evidence of drug trafficking. Mr. Thomas was arrested that morning at his residence and made an initial appearance the same afternoon. The government now seeks pretrial detention.

**ARGUMENT**

The government moves for detention under 18 U.S.C. § 3142(f)(1)(C), as this case involves a violation of the Controlled Substances Act for which the maximum term of imprisonment is 10 years or more. Each count of the indictment charges an offense with a maximum term of imprisonment in excess of 10 years. *See* ECF No.1, 21 U.S.C. § 841(b)(1). To determine if detention is warranted, 18 U.S.C. § 3142(g) directs the Court to consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against Mr. Thomas; (3) Mr. Thomas's history and characteristics; and (4) the nature and seriousness of the danger to the community that would be posed by Mr. Thomas's release. The rules of evidence governing admissibility at criminal trials do not apply, 18 U.S.C. § 3142(f), and the statute "entitles the government to make evidentiary proffers during detention hearings." *United States v. Vane*, 117 F.4th 244, 252 (4th Cir. 2024).

The offenses charged in the Indictment give rise to a rebuttable presumption in favor of detention. 18 U.S.C. § 3142(e)(3)(A). The facts and circumstances here do not support any such rebuttal; rather, there is clear and convincing evidence that no condition or combination of conditions can ensure Mr. Thomas's appearance or the safety of the community.

A.      **The Section 3142(g) factors weigh in favor of detention.**

1.      *Nature and Circumstances of the Offense*

The Indictment charges Mr. Thomas with multiple serious drug trafficking offenses involving heroin, fentanyl, and o-methyl fentanyl. These highly potent opioids are dangerous even in small quantities, yet Mr. Thomas conspired to distribute them in bulk. It only takes 2 milligrams of fentanyl to cause a potentially fatal overdose,[1] meaning the approximately 192 grams Mr. Thomas distributed in this case amounted to approximately 96,000 doses. O-methyl fentanyl is an even more potent analogue. During the recorded interactions between the CIs and Mr. Thomas, he explained to them how to mix drugs together. Mixing fentanyl and its analogues with other drugs such as heroin, cocaine, or other cutting agents, as Mr. Thomas instructed CI-1 and CI-2 to do here, increases the risk of fatal drug interactions.

The danger and seriousness of the offenses charged in the Indictment are reflected in the statutory mandatory minimum sentences of imprisonment set forth in the criminal code. *See* 21 U.S.C. § 841(b)(1). Count One alone carries a ten year mandatory term of imprisonment, and Counts Three through Five mandate a minimum of five years imprisonment upon conviction. Likewise, it is for the gravity of these offenses and their associated dangers to the public that the law provides for a presumption in favor of detention under 18 U.S.C. § 3142(e)(3)(A).

In sum, the nature and circumstances of these offenses weigh in favor of detention.

2.      *Weight of the Evidence*

The government has sufficient admissible evidence to prove each count of the Indictment beyond a reasonable doubt. The conspiracy and the substantive charges of possession with intent

---

[1] Drug Enforcement Administration, *Facts About Fentanyl*, https://www.dea.gov/resources/facts-about-fentanyl (last visited June 9, 2026).

to distribute controlled substances on February 4, 6, 27, and March 18, 2026, are all supported by cooperating witness testimony, audio and video recordings, photographs, and laboratory analysis.

Before each controlled purchase in the investigation, FBI agents met with CI-1 and/or C1-2 at a secure location and searched them, to include their vehicles for drugs, weapons, and other contraband. After confirming that neither possessed anything illegal, FBI agents provided CI-1 and/or CI-2 cash for the drug purchase and a covert recording/transmitting device. FBI agents then physically and electronically monitored CI-1 and/or CI-2 as they called Mr. Thomas to arrange for the transactions and as they met with and purchased suspected heroin from Mr. Thomas and Mr. Bailey. After buying the suspected heroin, CI-1 and/or CI-2 returned to a secure location where FBI agents seize the suspected drugs and recovered the recording/transmitting device. In addition to the recordings obtained from the devices given to CI-1 and/or CI-2, FBI agents also conducted physical surveillance, captured photographs, and in some instances obtained video footage from the commercial business where the distribution occurred. As depicted below, Mr. Thomas provided two types of suspected heroin to the CI's, which was later confirmed to be fentanyl and o-methyl fentanyl.



As a result of the four controlled purchase on February 4, 6, 27, and March 18, 2026, the government has also collected multiple sources of corroborated evidence to support each count, to include recorded statements by Mr. Thomas arranging for the distribution of the drugs and video footage of him distributing those drugs in exchange for cash. Finally, chemical analysis at the DEA's Mid-Atlantic Laboratory confirmed the presence of controlled substances, to wit, fentanyl, o-methyl fentanyl, and/or heroin, for each count of possession with intent to distribute charged in the Indictment.

Given the strength of the government's evidence and the highly dangerous illegal substances, this factor weighs heavily in favor of detention.

### 3.    History and Characteristics of the Defendant

Mr. Thomas's history and characteristics further support detention.

The criminal history identified in the Pretrial Services Report shows a lengthy history of drug trafficking in Baltimore and a notable episode where Mr. Thomas committed a drug trafficking crime while on probation for a previous drug trafficking conviction. In 1997, Mr. Thomas was convicted of possession with intent to distribute controlled substances in Baltimore, Maryland. A failure to appear warrant was issued in connection with these proceedings. As it appears from the Pretrial Services Report, while on probation for the 1997 conviction, Mr. Thomas was charged with possession with intent to distribute controlled substances in 2003, resulting in a term of incarceration for the probation violation and another state-level conviction for the substantive offense in 2004. Then, in 2009, Mr. Thomas was convicted in federal court for possession with intent to distribute cocaine base. The Court sentenced Mr. Thomas to an initial term of imprisonment 132 months, but he was released in 2015 after his sentence was subsequently reduced to 80 months in accordance with the Fair Sentencing Act of 2010. Most recently, in 2025,

Mr. Thomas was again convicted in state court for possession with intent to distribute controlled substances.

The Pretrial Services Report confirms that Mr. Thomas has no assets, employment, or other legitimate sources of income by which he can support himself. For decades, Mr. Thomas has been in the business of drug trafficking, profiting from the sale of highly addictive and dangerous substances on the streets of Baltimore. The government is sympathetic to Mr. Thomas's health conditions as identified in the Pretrial Services Report, however Mr. Thomas's actions are not acceptable. Mr. Thomas used drug proceeds to finance a luxury lifestyle, such as buying a Gucci bag and renting a Bentley car for a family member, as he told CI-2 during the May 19, 2026 controlled purchase, and to enjoy vacations in the Dominican Republic, Mexico, and, as planned for this very week, the Bahamas. Mr. Thomas has sought to project an image of himself as a successful drug trafficker through his luxury spending and his open flaunting of the drug proceeds in a retail store open to the public and on the street outside the suspected stash houses. It is with this image in mind that the government urges the Court to weigh this factor.

Based on these characteristics and Mr. Thomas's history of repeated and brazen and highly addictive and dangerous drug trafficking crimes, to include one such offense while on probation, the government submits that this factor weighs in favor of detention.

### 4.    *Nature and Seriousness of the Danger to Any Person or the Community*

While Mr. Thomas is not charged with any violent crimes in this case, the danger to the community posed by such an experienced and unrepentant drug trafficker is evident on the streets of Baltimore, where fatalities from drug overdoses have surpassed homicide rates for over a decade. The large quantities of high potency narcotics that Mr. Thomas conspired to release into the community and possessed with the intent to do so for his own personal enrichment present not

only a serious danger to the community, but a lethal threat. Even if Mr. Thomas were to remain within the confines of his home, the FBI investigation has shown that he is effective at managing his drug trafficking business remotely and through co-conspirators, as evidenced by his use of stash house locations, his coordination with CI-1 and CI-2 to arrange for transactions on recorded phone calls, and his arrangement for Mr. Bailey to act as an intermediary when he himself was unavailable. Based on Mr. Thomas's history and characteristics, discussed above, there is every indication that Mr. Thomas would once again return to this criminal activity if given the opportunity.

In short, evaluation of all the Section 3142(g) factors shows, by clear and convincing evidence, that Mr. Thomas should be detained pending trial and there are no conditions of release that can reasonably assure his appearance or the safety of the community.

**B.     The Third-Party Custodian is not Suitable to Ensure Compliance**

The proposal for Mr. Thomas to be released to home confinement at his residence in the custody of his spouse would not ensure Mr. Thomas's appearance at future proceedings or the safety of the community.

A third-party custodian "must be able reasonably to assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3142(c)(1)(B)(i). The entire purpose of a third-party custodian is to ensure compliance with a court's release order. *United States v. Jamerson*, 168 F.4th 188, 193 (4th Cir. 2026) (affirming contempt order against third-party custodian who failed to ensure compliance with release order).

Mr. Thomas and the Pretrial Service Report propose release into the custody of Jasmine Barros, Mr. Thomas's current spouse, at their shared residence. This residence is the very location

9

out of which Mr. Thomas operated his drug trafficking business, and where FBI agents recovered a digital scale containing suspected drug residue during the search warrants executed on June 8, 2026. Furthermore, as the Pretrial Services Report indicates, Ms. Barros works a demanding work schedule as a manager at MedStar from 7 a.m. to 6:30 p.m., Monday through Friday. Given Ms. Barros's absence from this residence for the majority of waking hours in the week, and the fact that Mr. Thomas is charged for committing the offenses while residing at this very residence, the government submits that these proposed release conditions cannot reasonably ensure compliance with the conditions of release, but would return Mr. Thomas to a permissive environment where he would be free to continue his business as usual.

### CONCLUSION

For the reasons stated above, and for any others presented at the detention hearing, the government submits that there is no condition or combination of conditions that would reasonably assure the safety of the community and the appearance of Mr. Thomas.

Kelly O. Hayes
United States Attorney

By: _____/s/_____
Christopher L. Izant
Special Assistant United States Attorney

_____/s/_____
LaRai N. Everett
Assistant United States Attorney

10